UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| **ERIC C. DAVIDSON,** | } |
| | } |
|     **Plaintiff,** | } |
| | } |
| **v.** | }     Case No.: **6:11-CV-03929-MHH** |
| | } |
| **CORIZON, Inc., f/k/a/** | } |
| **CORRECTIONAL MEDICAL** | } |
| **SERVICES, Inc.,** | } |
| | } |
|     **Defendant.** | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Eric C. Davidson is a state prisoner serving a 20-year sentence in the custody of the Alabama Department of Corrections (ADOC). Defendant Corizon, Inc. is a private medical contractor responsible for providing health care services to ADOC inmates. Mr. Davidson alleges that while he was housed at various ADOC institutions, Corizon provided grossly inadequate medical care for his recurrent ear infections. In this action, Mr. Davidson brings suit against Corizon for deliberate indifference to serious medical needs in violation of the Eighth Amendment. Corizon has asked the Court to enter judgment as a matter of law in its favor on Mr. Davidson's claim. (Doc. 70). For the reasons stated below, the Court denies Corizon's motion for summary judgment.

I.  **STANDARD OF REVIEW**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To demonstrate that there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). When considering a summary judgment motion, the Court must view the evidence in the record in the light most favorable to the non-moving party.  *Hill v. Wal-Mart Stores, Inc.*, 510 Fed. Appx. 810, 813 (11th Cir. 2013). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

II. **FACTUAL AND PROCEDURAL HISTORY**

Eric C. Davidson is an inmate in the custody of the Alabama Department of Corrections. (Doc. 74-1, p. 3). Corizon is a private medical contractor responsible for providing health care services to inmates with the Alabama Department of Corrections. (Doc. 78-1, ¶ 2). Corizon was created on June 3, 2011 as a result of

the merger of two organizations: Correctional Medical Services, Inc. (CMS) and Prison Health Services, Inc. (PHS). (Doc. 78-1, ¶ 3).

From February 1998 through February 2001, CMS held the medical care contract with the Alabama Department of Corrections. (Doc. 78, p. 2). NaphCare, Inc., an organization that is not affiliated with Corizon, held the contract from February 2001 to November 2004. (Doc. 78, p. 2). In November 2004, PHS took over the contract, which it held until November 1, 2007. (Doc. 78-1, ¶ 3). CMS took over the contract on November 1, 2007 and continued to hold the contract until merging with PHS to create Corizon in June 2011. (Doc. 78-1, ¶ 3). As of June 14, 2014, Corizon held the contract to provide medical services for the Alabama Department of Corrections. (Doc. 78-1, ¶ 2).

In September 2000, while under the care of Corizon at the Kilby Correctional Facility, Mr. Davidson suffered his first of many ear infections. (Doc. 74-1, p. 7). At that time, he took a shower after a maintenance upgrade was performed on the prison plumbing. (Doc. 74-1, p. 8). When Mr. Davidson turned on the shower, rust and grit came out of the pipe and went into his eye and ear. (Doc. 74-1, p. 8). Two or three days later, Mr. Davidson developed an earache and fever and had fluid draining from his ear. (Doc. 74-1, p. 8).[1] The infirmary gave

---

[1] Mr. Davidson believes that the rust and grit from the shower is responsible for his ear infections. (Doc. 74-1, pp. 7–8). However, Mr. Davidson acknowledges that no medical professional has ever told him that his ear infection was triggered by this incident. (Doc. 74-1,

Mr. Davidson Tylenol or Ibuprofen and the antibiotic Erythromycin, but he had an allergic reaction to the Erythromycin. (Doc. 74-1, p. 8). Next, the infirmary treated Mr. Davidson with the antibiotic Keflex, which cleared up the infection for about two months before the infection returned. (Doc. 74-1, p. 8). Mr. Davidson continued to have recurring infections for the next several years. (Doc. 74-1, pp. 9, 10).

In early 2001, Mr. Davidson was transferred from Kilby to the Bullock Correctional Facility where he stayed for approximately two years, and where he continued to have problems with recurring ear infections. (Doc. 74-1, p. 10). During this time, Mr. Davidson was under the care of NaphCare, an entity that is not affiliated with Corizon. The medical professionals at Bullock prescribed antibiotics, which cleared up his infection for some period of time. (Doc. 74-1, pp. 10–11). At some point during his time at Bullock, Mr. Davidson was sent to an audiologist who diagnosed him as having some hearing loss, but not enough to warrant hearing aids. (Doc. 74-1, p. 11). Also during his time at Bullock, Mr. Davidson made his first request to see an outside specialist about his recurring ear infections. (Doc. 74-1, pp. 12–13).

In 2003, Mr. Davidson was transferred to the Easterling Correctional Facility, where he had another ear infection that was treated with pain medication

---

pp. 9–10). Mr. Davidson has offered no evidence to support his theory, and the initial trigger of his earaches is irrelevant to his claim against Corizon.

and the antibiotic Keflex.  (Doc. 74-1, pp. 11, 12).  Mr. Davidson renewed his request to see an outside specialist about his ear infections.  The NaphCare staff denied this request but never refused to see or treat Mr. Davidson themselves.  (Doc. 74-1, p. 12).

Corizon resumed responsibility for Mr. Davidson's medical care in November 2004.  In 2005, Mr. Davidson was transferred to the Staton Correctional Facility.  (Doc. 74-1, p. 14).  When he arrived at that facility, he advised the medical staff of his recurrent ear infections and was initially prescribed an antibiotic.  (Doc. 74-1, pp. 13–14).  However, Mr. Davidson was taken off the antibiotic due to an allergic reaction.  (Doc. 74-1, p. 14).  Mr. Davidson states that he "went for a long period of time at Staton without treatment."  (Doc. 74-1, p. 14).  At one point while at Staton, Mr. Davidson went to the infirmary because a mix of what appeared to be blood and mucus was coming out of his ear.  (Doc. 74-1, p. 14).  Mr. Davidson states that the doctor told him he needed to see an ear specialist, but Mr. Davidson was never taken to an outside specialist during his stay at Staton.  (Doc. 74-1, p. 14).

In June 2007, Mr. Davidson was transferred to the Limestone Correctional Facility where he informed the receiving nurse of his various medical issues, including the recurring infections in his right ear.  (Doc. 74-1, pp. 14, 15).  At that time, Mr. Davidson also suffered from complications from a bullet wound and was

taking medication for his sinuses, acid reflux, and high blood pressure. (Doc. 74-1, p. 15). Because of his recurrent ear infections, the bullet wound, and the high blood pressure, Mr. Davidson was considered a "chronic care" patient and was seen in the Chronic Care Clinic on a monthly basis while at Limestone. (Doc. 74-1, pp. 15–16). If Mr. Davidson experienced problems with his ear in between clinic appointments, he would sign up for sick call, and a physician would see him. (Doc. 74-1, p. 16). At least three physicians prescribed antibiotics for Mr. Davidson's ear infections while he was at Limestone. (Doc. 74-1, p. 17).

In December 2009, Dr. Hood, the Associate Regional Medical Director for Corizon, examined Mr. Davidson's ear and found that "there was a missing tympanic membrane." (Doc. 74-2, p. 22).[2] Dr. Hood referred Mr. Davidson for a surgery consult. (Doc. 74-2, p. 23). The December 14, 2009 consultation request states that Mr. Davidson had a "2 year history of [tympanic membrane] perforation, vertigo, dizziness, hearing loss." (Doc. 71-3, p. 1). Mr. Davidson went to an ENT specialist at UAB, Dr. Withrow, who ordered an audiogram and a CT scan of Mr. Davidson's temporal bone. (Doc. 71-2, ¶ 5). The CT of Mr. Davidson's temporal bone was taken on December 18, 2009. (Doc. 71-2, ¶ 6).

During a follow-up visit on April 5, 2010, Dr. Withrow recommended Mr. Davidson undergo a tympanoplasty, or ear drum repair. (Doc. 71-2, ¶ 8). Mr.

---

[2] Dr. Hood is also serving as Corizon's medical expert in this case. (Doc. 71, p. 10)

Davidson subsequently was referred to an audiologist at the Center for Hearing in Athens, Alabama. (Doc. 71-2, ¶ 9). At Mr. Davidson's April 29, 2010 appointment, the audiologist noted that Mr. Davidson had "an air-bone gap" in his right ear due to his perforated eardrum. (Doc. 71-3, p. 6; Doc. 71-2, ¶ 9). The audiologist also fit Mr. Davidson's left ear with a hearing instrument to help with his hearing loss. (Doc. 71-2, ¶ 9).

Dr. Withrow ordered a second CT scan of Mr. Davidson's head, which was performed on July 1, 2010. (Doc. 71-2, ¶¶ 10, 11). On September 13, 2010, Mr. Davidson was taken to UAB for a pre-operative surgical appointment with Dr. Ben McGrew. (Doc. 71-2, ¶ 13). Before performing the surgery, Dr. McGrew recommended an MRI of Mr. Davidson's head, which was performed on November 9, 2010. (Doc. 71-2, ¶ 13).

Dr. McGrew performed the tympanoplasty surgery on November 15, 2010. (Doc. 71-2, ¶ 14). In the provider consultation report, Dr. McGrew ordered a follow-up appointment in three weeks. (Doc. 71-3, p. 18). Mr. Davidson was not returned to Dr. McGrew for a follow-up appointment until 25 weeks later on April 26, 2011, at which time Dr. McGrew noted that the perforation was closed. (Doc. 71-3, p. 27). In July 2011, Mr. Davidson complained that he was still suffering from infections in his right ear. (Doc. 71-2, ¶ 17). He was treated with

medications for the infections.  (Doc. 71-2, ¶ 17).  Mr. Davidson continued to suffer from recurrent ear infections after his surgery.  (Doc. 74-2, p. 36).

In November 2011, Mr. Davidson was transferred to Hamilton Work Release in Hamilton, Alabama.  (Doc. 74-1, p. 27).  Because there is no medical staff at the work release facility, inmates with medical problems are treated by the medical staff at the Hamilton A&I facility.  (Doc. 74-1, pp. 27–28).  Mr. Davidson states that during his time at the work release center, he experienced more ear infections, and on each occasion was transferred to the A&I facility to be examined by a physician.  (Doc. 74-1, p. 28).  Medical personnel at the A&I facility treated Mr. Davidson's recurring ear infections with antibiotics but did not refer Mr. Davidson to any outside specialists.  (Doc. 74-1, pp. 28–29).

Counsel for Mr. Davidson deposed Dr. Hood on September 26, 2013.  As of that date, Mr. Davidson still had right ear pain and had been treated for ear infections on "at least a couple of occasions" in the 12 months preceding the deposition.  (Doc. 74-2, p. 36).  A CT scan of Mr. Davidson's head was taken on October 2, 2013.  (Doc. 71-2, ¶ 19).  Dr. Hood states there was nothing on the CT scan that showed anything acute or necessitated additional surgery.  (Doc. 71-2, ¶ 20).

Mr. Davidson filed this lawsuit on November 16, 2011.  He asserts an Eighth Amendment claim for deliberate indifference to serious medical needs

against Corizon. (Doc. 1).[3] Initially, Mr. Davidson proceeded *pro se*. On March 14, 2013, counsel filed a notice of appearance on behalf of Mr. Davidson. (Doc. 46). Corizon filed a motion for summary judgment, which was fully briefed by the parties. (Docs. 70, 71, 74, 75). At the June 13, 2014 hearing on Corizon's motion for summary judgment, the Court requested additional briefing, which the parties provided. (Docs. 78, 80). On this record, the Court considers Corizon's motion for summary judgment.

## III. ANALYSIS

The only remaining defendant in this action is Corizon. In its supplemented motion for summary judgment, Corizon argues that Mr. Davidson's claims are outside the applicable statute of limitations. (Doc. 78). Corizon also contends that it is entitled to judgment as a matter of law because Mr. Davidson cannot produce evidence that an official corporate policy, practice, or custom contributed to the alleged denial of adequate medical care. (Doc. 75). For the reasons explained below, the Court finds that Mr. Davidson's claims are within the statute of limitations, and the Court denies Corizon's motion for summary judgment.

---

[3] Mr. Davidson also asserted claims against individual defendants Debbie Hunt, Sophilia Clemmons, Patricia Washington, Barry Barrett, and Poursaied Shala. (Doc. 1, p. 1). On May 29, 2013, the Court dismissed Ms. Washington because she had filed a petition with the U.S. Bankruptcy Court. (Doc. 53). The remaining individual defendants filed a motion for summary judgment (Doc. 72), which the Court granted on June 17, 2014. (Doc. 77).

A.     **Statute of Limitations**

Corizon argues that Mr. Davidson's claims fall outside the two-year limitations period applicable to § 1983 actions. (Doc. 78, p. 14).[4] Corizon explains that Mr. Davidson requested surgery for his ear infections as early as June 2007, but did not file this action until November 16, 2011, at least two years after the statute of limitations expired. (Doc. 78, p. 14). This argument overlooks the continuing nature of Mr. Davidson's alleged injuries.

Generally, the statute of limitations accrues "when the prisoner knows or should know that he has suffered an injury that forms the basis of his complaint and can identify the person who inflicted the injury." *Baker v. Sanford*, 484 Fed. Appx. 291, 293 (11th Cir. 2012) (per curiam) (citing *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003)). "However, an 'allegation of a failure to provide needed and requested medical attention constitutes a continuing tort, which does not accrue until the date medical attention is provided.'" *Id.* (quoting *Lavellee v. Listi*, 611 F.2d 1129, 1132 (5th Cir. 1980)). "The critical distinction in the continuing violation analysis is whether the prisoner complains 'of the present consequence of a one time violation, which does not extend the limitations period,

---

[4] Because there is no federal statute of limitations for actions brought under 42 U.S.C. § 1983, federal courts must apply the appropriate state statute of limitations. In *Owens v. Okure*, 488 U.S. 235 (1989), the Supreme Court held that the general or residual statute of limitations governing personal injury action is the proper statute of limitations to be applied to § 1983 actions. The general or residual statute of limitations in Alabama is two (2) years. *See* Ala. Code § 6-2-38(l); *Holt v. Valls*, 395 Fed. Appx. 604, 606 (11th Cir. 2010).

or the continuation of that violation into the present, which does.'" *Id.* (quoting *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003)).

Mr. Davidson's evidence indicates that Corizon repeatedly treated his ear infections with antibiotics but did not refer him to an outside specialist until December 2009, a date within the two-year statute of limitations. (Doc. 74-1, p. 17; Doc. 71-2, ¶ 5). (Doc. 74-1, p. 17). That specialist, Dr. Withrow, recommended surgery in April 2010, but the surgery did not take place until November 2010, slightly more than a decade after Mr. Davidson suffered and was treated for his first of many ear infections. (Doc. 71-2, ¶¶ 8, 14). In his deposition, Dr. Hood states that Mr. Davidson has suffered from recurrent ear infections since the November 2010 surgery and acknowledges that the infections could be causing further hearing loss. (Doc. 74-2, pp. 35–36). Because Mr. Davidson's deliberate indifference claim is based upon a continuous injury that extends into the statute of limitations period, the Court will consider the merits of Corizon's motion for summary judgment.

### B. Mr. Davidson's Eighth Amendment Claim

Corizon asserts that it is entitled to judgment as a matter of law on Mr. Davidson's Eighth Amendment claim because there is no evidence to show that Corizon had a policy, practice, or custom of delaying or denying adequate medical

11

care that resulted in deliberate indifference to Mr. Davidson's constitutional rights. (Doc. 71, pp. 20–21). The Court disagrees.

The Eighth Amendment to the United States Constitution, which applies to states under the Fourteenth Amendment, provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const. amend. VIII, XIV. "[A] prison staff's deliberate indifference 'to an inmate's serious medical needs violates the inmate's right to be free from cruel and unusual punishment.'" *Fields v. Corizon Health, Inc.*, 490 Fed. Appx. 174, 181 (11th Cir. 2012) (per curiam) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Under 42 U.S.C. § 1983, a prisoner whose Eighth Amendment rights are violated may sue the municipality that runs the prison system. *Fields*, 490 Fed. Appx. at 181. Although Corizon is a private entity, "when a private entity . . . contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state and becomes the functional equivalent of the municipality under section 1983." *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (internal quotation marks omitted). Liability under section 1983 cannot be based on a theory of *respondeat superior*. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 692 (1978). Instead, Mr. Davidson must "demonstrate that (1) his constitutional rights were violated;

(2) [Corizon] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) the policy, custom, or practice caused the violation." *Fortson v. City of Elberton*, 592 Fed. Appx. 819, 823 (11th Cir. 2014) (citation omitted).

## 1. Whether Mr. Davidson's Constitutional Rights Were Violated

First, Mr. Davidson must demonstrate an underlying violation of a constitutional right. To establish a claim for deliberate indifference, Mr. Davidson must present evidence (1) that he had an objectively serious medical need; (2) that the prison officials acted with deliberate indifference to that need; and (3) that the deliberate indifference caused Mr. Davidson's injury. *See Jones v. Rutherford*, 546 Fed. Appx. 808, 810 (11th Cir. 2013). Corizon does not dispute that Mr. Davidson's recurring ear infections constituted an objectively serious medical need. (*See* Docs. 71, 75, 78). It does, however, dispute that its employees acted with deliberate indifference to Mr. Davidson's recurring ear infections. (Doc. 75, p. 1).

To show that Corizon employees acted with deliberate indifference to his medical needs, Mr. Davidson must present evidence that the employees "(1) had subjective knowledge of a risk of serious harm; (2) disregarded the risk; and (3) acted grossly negligent." *Jones*, 546 Fed. Appx. at 810. "Deliberate indifference includes the delay of treatment for obviously serious conditions where it is

apparent that delay would detrimentally exacerbate the medical problem, where the delay does seriously exacerbate the medical problem, and where the delay is medically unjustified." *Fields*, 490 Fed. Appx. at 182 (internal quotation marks omitted).

In his deposition, Corizon's medical expert, Dr. Hood, testified about the standard of care for recurring ear infections:

> Q: Okay. At what time with a reoccurring infection would . . . diagnostic tests have been appropriate?
>
> A: I think he, you know, certainly deserved, you know, treatment of the ear infection, simple treatment of the ear infections a time or two. But if they kept reoccurring and he's having symptoms, you know, it would be--I think it's time to, you know, look a little deeper, look a little further to see what the cause is.

(Doc. 74-2, p. 32). Under this standard of care, there is a question of fact as to whether Corizon employees had subjective knowledge of a serious risk of harm, disregarded the risk, and were grossly negligent in waiting years before sending Mr. Davidson to an outside specialist. When Corizon resumed responsibility for Mr. Davidson's medical care in 2004, there was a 4-year documented history of Mr. Davidson's recurring ear infections. (*See* Doc. 74-1, pp. 7–14). Nevertheless, Corizon employees continued to treat Mr. Davidson's ear infections with antibiotics. It was not until December 2009, with a 9-year documented history of recurring ear infections and at least a two-year history of eardrum perforation, that

Mr. Davidson finally was referred to an outside specialist to determine the underlying cause of his ear infections.

After Mr. Davidson's November 2010 surgery, his ear infections continued. (Doc. 74-2, p. 36). Corizon continued to treat these infections with multiple rounds of antibiotics. (Doc. 74-1, pp. 28–29). Mr. Davidson was not taken to an outside specialist until October 2013. (Doc. 71-2, ¶ 19).

Dr. Hood admits that there is an issue of fact regarding whether these delays in treatment have contributed to Mr. Davidson's hearing loss:

> Q: Okay. Is it reasonable to presume that these recurrent ear infections may cause or be causing additional hearing loss in that ear?
>
> A: We're talking about the right ear, the operated ear?
>
> Q: Yes, sir.
>
> A: Yes.

(Doc. 74-2, pp. 35–36). Because a jury could find that delays in referring Mr. Davidson for outside treatment have exacerbated Mr. Davidson's hearing loss, Mr. Davidson has demonstrated, for the purpose of summary judgment, an underlying constitutional violation of deliberate indifference to serious medical needs.

At the June 13, 2014 hearing on Corizon's motion for summary judgment, the Court ordered Corizon to submit additional briefing on whether Corizon could be held responsible for medical treatment provided to Mr. Davidson prior to 2007.

15

(Tr. June 13, 2014 hearing).  Along with its supplemental brief, Corizon submitted a second affidavit from Dr. Hood that included the following statements:

> "Mr. Davidson at all times received medical care within the standard of care of physicians practicing medicine in the state of Alabama for issues related to his infected ear."

(Doc. 78-1, ¶ 17).

> "Nothing the medical staff did, or did not do, regarding the health care provided to Mr. Davidson caused any hearing loss, contributed to any hearing loss or caused any nerve damage to Mr. Davidson."

(Doc. 78-1, ¶ 40).[5]  An affidavit may "be disregarded if it 'flatly contradict[s]' earlier deposition testimony without explanation." *Pivac v. Component Services & Logistics, Inc.*, 570 Fed. Appx. 899, 901 (11th Cir. 2014) (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986)).  However, "'[a] definite distinction must be made between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence.'" *Id.* (quoting *Tippens*, 805 F.2d at 953).  In this case, the Court does not reject Dr. Hood's second affidavit as a sham.  However, the Court does find that the discrepancy between Dr. Hood's second affidavit and his earlier deposition testimony is sufficient to create a genuine issue of material fact regarding the

---

[5] Dr. Hood did not submit this second affidavit until after the Court's June 13, 2014 hearing during which the Court indicated that Dr. Hood's deposition testimony created a question of fact regarding whether Mr. Davidson received adequate care for his recurring ear infections.  (Tr. June 13, 2014 hearing).

adequacy of Corizon's treatment of Mr. Davidson for purposes of summary judgment.

### 2. Whether Corizon's Policies Caused the Violation of Mr. Davidson's Constitutional Rights

Because there is a genuine issue of material fact regarding whether Mr. Davidson's Eighth Amendment right was violated, the Court will consider whether Corizon may be subject to § 1983 liability because of a policy or custom that resulted in deliberate indifference to Mr. Davidson's constitutional rights. The policy must be the "moving force" behind the alleged constitutional violation. *Monell*, 436 U.S. at 694.

In Dr. Hood's deposition, he explained that Corizon is a "full risk" health provider. (Doc. 74-2, p. 29). Corizon assesses the inmate population and creates a budget. Then, for a pre-agreed contract price, Corizon employs all medical staff in the facility and covers the cost of medication, off-site referrals, and hospitalizations. (Doc. 74-2, pp. 28–29). Therefore, the less treatment inmates require, the more money Corizon makes. (Doc. 74-2, p. 29).

Mr. Davidson has submitted Corizon's "Physicians in Corrections" booklet, which CMS created in 2004 and utilized until its merger with PHS in 2011. (Doc. 74-2, p. 14). The chapter on medical practice in the correctional system states, "The primary cause of cost overruns is due to off-site medical care." (Doc. 74-5, p. 1). Therefore, "the prison medical director has to keep an eye on utilization of

all off-site procedures." (Doc. 74-5, p. 13). The booklet explains, "This is the essential reason for putting well-trained primary care doctors at the prison site. The more we can do, the better the cost control." (Doc. 74-5, p. 1). In the chapter defining medical necessity, the booklet states, "It is very difficult to get a contract increase in payment when dealing with government entities. Therefore, we are forced to look at each and every case with cost containment related to necessary medical care." (Doc. 74-7, p. 1).

"[A] defendant who delays necessary treatment for non-medical reasons may exhibit deliberate indifference." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (citation omitted). Additionally, "deliberate indifference may be established by a . . . decision to take an easier but less efficacious course of treatment." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). Mr. Davidson has presented evidence that creates a question of fact whether Corizon, in accordance with its policies, delayed sending Mr. Davidson to an outside specialist to increase profits, which is not a medical justification for delay. Additionally, Mr. Davidson has presented evidence that Corizon pursued a less efficacious method of treatment (repeated use of antibiotics) because it was more cost-effective than referring Mr. Davidson to an ENT specialist to determine the underlying cause of his recurring ear infections. Because there is an issue of material fact regarding whether Corizon had a policy that was the moving force

behind the alleged violation of Mr. Davidson's constitutional rights, Mr. Davidson's Eighth Amendment claim will proceed to trial.

## IV. CONCLUSION

For the reasons explained above, the Court **DENIES** Corizon's motion for summary judgment. The Court will issue a separate order setting this case for trial.

**DONE** and **ORDERED** this July 10, 2015.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE